The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Edward Garner. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer.
3. Plaintiff's average weekly wage was $258.30.
4. Plaintiff alleges an injury by accident on September 14, 1992 resulting in an injury to her arm, back, neck and hand.
5. The defendant-employer denied liability and the issue to be determined by the Commission is whether plaintiff suffered a compensable injury as alleged.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. The plaintiff filed a Form 18 with the Industrial Commission on October 28, 1992, in which she alleged an occupational disease from "cold air buildup and market for twelve years from coolers and freezers." The plaintiff indicated that the nature and extent of her injury was "tendonitis and left arm/elbow joint. Continuous redness in both hands and fingers. Fingers numb at times." She alleged that her disability began September 21, 1992 and that she quit her employment due to the occupational disease.
2. The plaintiff, Connie Kennedy Godbold, worked for twelve years for defendant Piggly Wiggly as a meat wrapper. Doing that job, she wrapped and cut heavy pieces of meat and lifted and unloaded heavy boxes and other store inventory. This work was very strenuous.
3. Temperatures in the meat department would be cold. During the last seven years at the store, plaintiff wrapped meat all day long every day. Wrapping meat required her to lift heavy pieces of meat and wrap it in paper using turning and flipping motions with her hands.
4. On Monday, September 14, 1992 plaintiff was flipping hamburger meat into a grinder and felt a pulling sensation in her left arm. Later that same morning, plaintiff was stacking fifty-pound boxes of chicken when a box fell on her left arm and she "felt a ball of fire go right up her back."
5. Before her accident date, plaintiff had a long period of problems with her left arm. It would hurt at work when she lifted heavy boxes of meat and when she flipped meat. A co-worker testifying for the defendant had heard plaintiff complain about arm pain.
6. Plaintiff's supervisor, John Creach, was in the store and plaintiff immediately told him about the accident. Mr. Creach testified and corroborated that plaintiff had reported the accident to him that morning and that she rested with him and took a Tylenol. A store employee testifying for defendant testified that the store procedure was for Ms. Godbold to report her accident to Mr. Creach.
7. Plaintiff continued to work for defendant-employer, but could barely use her arm. Because she kept having pain, plaintiff gave notice of her resignation at the end of the week. Plaintiff resigned on September 21, 1992 because she couldn't wrap and lift boxes any more. Plaintiff's supervisor stated that plaintiff had resigned later in the week informing him that her arm was hurting and her fingers stayed cold and numb.
8. The first medical treatment plaintiff received after leaving her employment was on October 13, 1992. On that day the plaintiff sought treatment from her family physician, Dr. James R. Lambert. At that visit the plaintiff complained of aches and pains in both hands and arms and related the pain to her employment as a meat wrapper having to work in a refrigerated area. Dr. Lambert's diagnosis was tendonitis of the right and left forearm and Raynaud's phenomenon. Dr. Lambert next saw the plaintiff on January 5, 1993. She was again complaining of pain in her hands and thoracic, or middle back pain. Plaintiff continued to have pain in her wrist and radiating up her elbow. This pain was made worse with exertion.
9. The plaintiff was referred by Dr. Lambert to Dr. Rudolph Maier, a neurologist, who first saw the plaintiff on February 12, 1993. At that visit the plaintiff complained of pain in her left arm, wrist and pain off and on in her back. Dr. Maier felt that the pain in plaintiff's wrists and arms was typical for carpal tunnel syndrome and that was his diagnosis. Dr. Maier stated in his deposition that the carpal tunnel syndrome was caused by repetitive motion at work. Dr. Maier further explained plaintiff's job, which involved repetitive meat wrapping, was a substantial factor causing plaintiff's condition. He further believed that any trauma on September 14, 1992 produced a further acute injury which made the left-hand numbness more prominent.
10. Dr. Maier opined that the nature of plaintiff's duties for defendant-employer exposed her to an increased risk of developing the occupational disease of carpal tunnel syndrome than members of the general public.
11. The plaintiff next sought medical treatment from Dr. David Rockwell on May 11, 1993. At that visit she complained of burning pain up her arm into her neck, as well as pain in the elbow and wrist and finger numbness and tingling. Dr. Rockwell's impression was that the plaintiff may have mild to moderate carpal tunnel syndrome on the left and fibromyalgia. Dr. Rockwell opined that the trauma from plaintiff's job was related to her current condition. On May 31, 1993 the plaintiff underwent a surgical decompression of her left median nerve as recommended by Dr. Rockwell to ease plaintiff's carpal tunnel pain.
12. The Full Commission gives greater weight to the opinions of Dr. Lambert and Dr. Maier in finding that plaintiff suffers from an occupational disease which was aggravated by her injury by accident while employed by defendant.
13. The plaintiff also sought treatment from Dr. David E. Tomaszek on January 12, 1994. An MRI taken by Dr. Tomaszek revealed widespread disc problems throughout the middle and low back and disc bulging with some mild spinal compromise at C6-7. The plaintiff underwent epidural nerve blocks on February 9, 1994 and spoke with Dr. Tomaszek in follow-up on March 16, 1994. Dr. Tomaszek indicated that potential surgical remedies were a C6-7 laminectomy and L5-S1 laminectomy. Dr. Tomaszek opined that lumbar and cervical disc problems are related to repetitive lifting, twisting and bending. However, the Full Commission finds that plaintiff's back condition is not causally related to a specific traumatic incident occurring at work.
14. As the result of the aggravation of plaintiff's occupational disease plaintiff has been unable to earn wages with defendant-employer, or in any other employment, beginning on September 21, 1992 and continuing.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff is entitled to receive compensation for her disability resulting from carpal tunnel syndrome which is an occupational disease, which was aggravated by plaintiff's injury by accident on September 14, 1992. Plaintiff's condition falls under N.C.G.S. § 97-53 (13) which provides that an occupational disease shall be deemed to include:
 Any disease, other than hearing loss, covered under another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.
2. There are four requirements necessary to establish an occupational disease under N.C.G.S. § 97-53 (13). First, the disease must be "characteristic" of a profession. A disease is considered to be characteristic of a profession when there is a recognizable link between the nature of the job and an increased risk of contracting the disease in question. Second, the disease must be "peculiar to" the occupation. The term peculiar to the occupation means that the condition of the employment must result in a hazard which distinguishes it in character from the general run of occupations and is in excess of that attending employment in general. Third, the disease must not be an ordinary disease of life to which the general public is equally exposed. Fourth, there must be proof of a causal connection between the disease and the employment. The claimant has the burden of proof with respect to each of these four elements in order to establish compensability. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981).
3. As a result of her occupational disease, plaintiff is entitled to temporary total disability to be paid by defendant at the rate of $172.86 per week from September 21, 1992 and continuing until plaintiff returns to work or defendants obtain permission from the Industrial Commission to cease payments. The accrued amount shall be paid to plaintiff in a lump sum subject to attorney's fees. N.C.G.S. § 97-29.
4. As a result of her occupational disease, plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred when bills for the same have been submitted to the defendants and approved pursuant to procedures established by the Industrial Commission. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for workers' compenesation benefits for disability arising from carpal tunnel syndrome is granted.
2. Defendants shall pay temporary total disability at the rate of $172.86 per week from September 21, 1992 and continuing until plaintiff returns to work, or defendants obtain permission from the Industrial Commission to cease payments. The accrued amount shall be paid to plaintiff in a lump sum subject to attorney's fees.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her occupational disease when bills for the same have been submitted to the defendants and approved pursuant to procedures established by the Industrial Commission.
4. A reasonable attorney's fee of 25 percent of the past and future compensation due plaintiff is approved for plaintiff's counsel. This fee shall be deducted and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs as well as an expert witness fee in the amount of $300.00 to Dr. Rudolph Maier, and $300.00 to Dr. David Tomaszek.
FOR THE FULL COMMISSION
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ________________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/mj 7/31/95